```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                              -  -  -

 4    EDWARDS LIFESCIENCES AG and   :      Civil Action
      EDWARDS LIFESCIENCES LLC,      :
 5                                    :
                   Plaintiffs,        :
 6                                    :
           v.                         :
 7                                    :
      COREVALVE, INC.,                :
 8    and MEDTRONIC COREVALVE, LLC, :
                                      :
 9                 Defendants.        :      No. 08-91(GMS)

10                              -  -  -

11                         Wilmington, Delaware
                      Wednesday, January 12, 2011
12                            12:15 p.m.
                         Telephone Conference
13                              -  -  -

14
      BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge
15

16    APPEARANCES:

17             JACK B. BLUMENFELD, ESQ.
               Morris, Nichols, Arsht & Tunnell LLP
18                  -and-
               JOHN E. NATHAN, ESQ., and
19             CATHERINE NYARADY, ESQ.
               Paul, Weiss, Rifkind, Wharton & Garrison LLP
20             (New York, N.Y.)

21                            Counsel for Plaintiffs

22

23

24

25
```

```
 1    APPEARANCES CONTINUED:

 2              JOHN W. SHAW, ESQ., and
               PILAR GABRIELLE KRAMAN, ESQ.
 3             Young Conaway Stargatt & Taylor LLP
                        -and-
 4             BRIAN FERRALL, ESQ.
               Kecker & Van Nest LLP
 5             (San Francisco, CA)

 6
                         Counsel for Defendants
 7

 8                        -   -   -

 9

10              THE COURT:  Good morning.  Counsel, who is on

11    the line for Edwards Lifesciences?

12              MR. BLUMENFELD:  Good afternoon, Your Honor.

13    Jack Blumenfeld along with John Nathan and Catherine Nyarady

14    at Paul Weiss.

15              THE COURT:  Good morning.

16              And for Corevalve?

17              MS. KRAMAN:  Good afternoon, Your Honor.  This

18    is Pilar Kraman from Young Conaway.  With me on the line is

19    John Shaw, and from Kecker & Van Nest Brian Ferrall.

20              THE COURT:  Do we have everyone now?

21              MR. BLUMENFELD:  I think that's everyone, Judge.

22              THE COURT:  Mr. Blumenfeld, are you going to

23    handle this?

24              MR. BLUMENFELD:  I am going to try, Your Honor.

25              The reason we asked for this conference --
```

1              THE COURT:  You usually do okay, Mr. Blumenfeld.

2              MR. BLUMENFELD:  Thank you, Your Honor.

3              We are seeking a determination that Mr. Nathan

4    and his team at Paul Weiss and Dr. Buller, you may remember

5    from trial, can participant in two reexaminations that were

6    started by Medtronic, which is Corevalve's parent.

7              To give you a little bit of background, I don't

8    think I need to remind you that we had a trial last spring

9    and we are at the posttrial motions stage.

10             At the trial Corevalve didn't assert any prior

11   art defenses.  They dropped them the night before trial

12   started.  But after trial, Medtronic then filed

13   reexamination requests on both the '552 and the '462

14   patents.  And Medtronic in those requests cited certain

15   prior art, and they made arguments based essentially on

16   three things:  first, Your Honor's claim construction on the

17   two patents; second, Mr. Nathan's closing argument about the

18   Corevalve device, which we don't agree with, we think was

19   out of context, but that's what they did; and third, Dr.

20   Buller's testimony about the Corevalve device and certain

21   photographs that he had used at trial.

22             And Medtronic submitted parts of the litigation

23   record to the Patent Office, and a member of their trial

24   team even submitted a declaration, attaching certain

25   demonstrative exhibits that we had provided to them before

1    and during the trial.  Medtronic provided parts of the trial

2    transcript, including some of Dr. Buller's testimony, to the

3    Patent Office.

4              The situation we are in now is that the Patent

5    Office has rejected Claim 1 of the '552 patent based on the

6    Irsek prior art and has rejected Claim 1 of the '462 patent

7    based on the Strecker prior art.  Of course, there was no

8    trial record on either Irsek or Strecker because they were

9    dropped.

10             But Mr. Nathan and his colleagues at Paul Weiss

11   spent a couple years studying those patents and taking

12   discovery about them.  There is, of course, also nothing

13   confidential about those two patents.

14             Now, Mr. Nathan and Paul Weiss don't do any

15   patent prosecution work for Edwards.  But given the record

16   that Medtronic made in the Patent Office about what Mr.

17   Nathan argued and what Dr. Buller said, Edwards has

18   concluded that it's necessary to have them involved in the

19   reexamination.  And certainly from our point of view, there

20   is nobody in a better position to respond to allegations

21   about either the prior art or what Mr. Nathan and Dr. Buller

22   said at trial than Mr. Nathan and his team and Dr. Buller.

23             So we approached Corevalve's lawyers.  They

24   won't agree that Mr. Nathan or Dr. Buller can participate in

25   the reexams.

1             Just to put the issue in context, under the

2     protective order, Paragraphs 4 and 6, attorneys working on

3     patent prosecution can't have access to confidential

4     information of the other party.  And here, you know, Mr.

5     Nathan and Dr. Buller certainly did have access to

6     confidential information from Corevalve.

7             I am not sure exactly why Corevalve's lawyers

8     can participate, their trial lawyers, who had access, can

9     participate but they don't believe Edwards can.  But that's

10    their position.  We don't agree with it.  But we certainly

11    don't want to run into a situation where there is a

12    suggestion we are violating a Court order.  And the

13    protective order also permits any party to ask the Court to

14    modify the protective order that's in Paragraph 29.

15            I don't know the extent to which Your Honor has

16    been involved in these prosecution bar issues.  In my

17    experience, in some circumstances, it makes sense.  We don't

18    see how it really makes sense here, for a couple of reasons.

19            First, because Medtronic opened up this whole

20    issue.  And they shouldn't, in our view, be able to have

21    their litigation lawyers say, you know, look at what Mr.

22    Nathan and Dr. Buller said and then say, but Mr. Nathan and

23    Dr. Buller can't respond.  It shouldn't be one direction.

24            The second reason is because the arguments about

25    Irsek and Strecker are all based on things in the public

1    record, either the prior art itself, the trial record about

2    the Corevalve device, none of that is confidential.  And for

3    that reason, and I think this is supported by case law, we

4    don't think the reexamination should be subject to the

5    prosecution bar.  There is no good reason why, with

6    Corevalve or its parent having opened up the statements by

7    Mr. Nathan and Dr. Buller in the Patent Office, they

8    shouldn't be able to respond.

9           We don't know of any good reason why Mr. Nathan

10   and his team shouldn't be able to address Irsek and

11   Strecker, which are not confidential information, which they

12   have been studying for years, and to deal with that during

13   the reexamination.

14           That's the way we see it.

15           And the relief we ask for is a determination

16   that Mr. Nathan and his team and Dr. Buller can participate

17   in those reexaminations.

18           THE COURT:  Okay.  Thank you, Mr. Blumenfeld.

19           Who is going to respond?

20           MR. FERRALL:  I will, Your Honor.  This is Brian

21   Ferrall.  Good afternoon.

22           First, let me make one thing very clear, that I

23   have told counsel for Edwards from the beginning that if

24   what they are interested in doing is the same as what an

25   associate at my firm was asked to do, that we have no

1      problem with that.

2              To the extent this is a sort of sauce for the

3      goose, sauce for the gander argument, then it's not

4      something that we should be bothering the Court with.

5              Let me explain how it was that an associate,

6      Michael Gatterberg, in my firm, submitted an affidavit.

7              Medtronic did not rely on trial counsel, either

8      my firm or the Knobbe Martens firm, for reexam.  We did not

9      play a role formulating the reexam or submitting that.  We

10     are not reexam counsel.

11             Medtronic hired separate counsel for that, just

12     like we are suggesting Edwards should do.

13             Rather, what happened was, in response to the

14     original reexam submission, which included some trial

15     evidence, the Patent Office asked that the documents be

16     authenticated.  On that basis, and on that basis alone, we

17     submitted a, essentially a ministerial affidavit,

18     authenticating documents from the trial and demonstratives

19     that had been exchanged.  All public information and purely

20     administrative.

21             And, so, again, if what Edwards needs to do is

22     to counter that evidence with authenticating

23     counter-designations of trial testimony or counter-evidence,

24     we have no problem with that.

25             What I am hearing and what I understand Edwards

would like is a wholesale exemption from the prosecution

bar.  And I think the case law, the Deutsche Bank Federal

Circuit case that came out last year, makes a couple of

things pretty clear.  It draws a clear distinction between

purely administrative roles which the Federal Circuit

observed typically almost never involve competitive

decision-making, which is the touchstone of these issues,

versus active involvement in prosecution, including the

right to formulate and make arguments or formulate new

claims or amend claims.

    As I understand it, Edwards wants the latter,

not the former.

    So the second thing that the Deutsche Bank case

makes clear is that when a patent holder such as Edwards is

seeking an exemption from a prosecution bar, it is their

burden to show both a low risk of inadvertent use of

confidential information and that the burden tips in their

favor.

    I have not really heard either from Edwards,

either in the meet-and-confer or today, what -- there has

been, I think, no recognition that, the parties to this

case, as Your Honor I am sure will remember, have had a

number of disputes in the course of the litigation about the

sensitivity of materials.  Edwards has had their share of

times when they have prevented the disclosure of

1    confidential information and the like.

2            Indeed, I looked through the record back before

3    my firm was involved.  In June of 2009, I believe it was,

4    there was a discovery conference in which Edwards asked the

5    Court for an exception to the protective order to allow it

6    to use evidence about this Irsek prior art, confidential

7    evidence, that is, because there was some confidential

8    testing of the Irsek device.  And Edwards wanted to use that

9    in parallel litigation in Europe.  And they also wanted to

10   use confidential documents that Corevalve had characterizing

11   its own device in Europe.

12            The Court denied that motion, and rightfully so,

13   needless to say, is our view about it.

14            So the idea that arguments about Irsek or

15   confidential documents about the characterization of the

16   product will not be at risk of disclosure if Paul Weiss has

17   cart blanche in the reexam I don't think is a fair

18   characterization of the history of the case.

19            There is one other thing I want to point out.  I

20   proceed with some trepidation, because, of course, if I

21   don't prevail today, I don't want to give Edwards a roadmap

22   about what to do.

23            But there are, also, documents describing future

24   Corevalve products that have been exchanged in the case.

25   They have been the subject of deposition.  They have been

deposition exhibits.  So that is sort of the prototypical

type of risk that a prosecution bar seeks to prevent, to

make sure that in the course of prosecution, which, and it

can happen in reexam, also, of course, that claims are not

amended with the idea of reaching a future product while

overcoming the prior art.

So, you know, the risk that the Deutsche Banc

case talks about of inadvertent use of the inability of the

human mind to compartmentalize what one knows when acting on

behalf of a client, I think, is directly applicable here.

So we have always operated under the belief that

trial counsel were not going to be actively working on

participating in reexam.  And the prospect of Paul Weiss

participating in claim amendments or Dr. Buller submitting a

declaration, talking about why he said certain things at

trial in light of confidential documents or, worse yet, I

guess, Dr. Buller participating in a confidential interview

with the examiner where there is not even any record of what

is said, I think goes right to the heart of what the

prosecution bar in the protective order was designed to

prohibit.

THE COURT:  Thank you, Mr. Ferrall.

Mr. Blumenfeld.

MR. BLUMENFELD:  Your Honor, Thank you.

First of all, you know, Edwards does have other

1    reexamination counsel.  The idea was not that Paul Weiss

2    would be handling it alone.

3              THE COURT:  Let me get you to respond, and say

4    whatever you want to say, though, to Mr. Ferrall's point

5    that the affidavit at issue, prepared and submitted by, I

6    gather, an associate who was involved in the litigation, was

7    very limited.

8              MR. BLUMENFELD:  The declaration attached

9    documents and it was fairly limited.  What was not limited

10   was the arguments that Medtronic's counsel made about what

11   Mr. Nathan argued and what Dr. Buller testified.

12             So we don't think it's enough for us to be able

13   to authenticate our own documents.  That's not what we are

14   talking about here.

15             But when someone comes in and says, here's how

16   the reexamination ought to come out and we are talking about

17   the validity, patentability of these patents, because Mr.

18   Nathan argued this to the jury in his closing, we feel that

19   Mr. Nathan has to be able to participate in responding to

20   that.  The same with Dr. Buller's testimony.

21             So it is a little different.  What we are

22   talking about here, though, isn't confidential Corevalve

23   information, which I understand that Mr. Ferrall is

24   concerned about.

25             First, there is nothing confidential about Irsek

1    or Strecker.  And there is nothing confidential about the

2    current Corevalve device.  It's out there.  We have it.  It

3    was discussed at length at trial.  But essentially, what we

4    are talking about here is responding to office actions about

5    prior art.  We are not asking for this leave in order for

6    Mr. Nathan or Dr. Buller to be able to be involved in claim

7    amendment strategy, but to respond about prior art.  And

8    that part, I think, there really is no concern about

9    confidential information.

10             And the case law, there are decisions in the

11   last year from both Judge Robinson and Judge Thynge about

12   how prosecution bars really shouldn't apply in

13   reexaminations because they are different in that you can't

14   broaden the claims.  We are not talking about that.

15             What we are talking about is responding to

16   arguments that were made about Irsek and Strecker and to

17   some extent about the Corevalve device at trial.

18             We just don't see that there is -- one, we think

19   it's necessary; and, two, in that context, we don't see a

20   risk of inadvertent disclosure.

21             THE COURT:  Mr. Ferrall, could you respond to

22   that narrow point?

23             MR. FERRALL:  Yes.  First of all, as Mr.

24   Blumenfeld has said from the outset, Irsek and Strecker were

25   not the subject of the trial.  So this is not about

1    characterization or recharacterizing Mr. Nathan's arguments

2    about those pieces of prior art, to my knowledge.

3             What it is about is what was said and presented

4    to the jury, and the basis for the jury verdict about the

5    Corevalve device.  And as I see it, we didn't submit

6    argument about what Mr. Nathan meant or what Dr. Buller

7    meant but may not have said at trial.  We presented what was

8    said, "we" meaning our reexam counsel.  I didn't do

9    anything.  But we presented what was said, and argued from

10   that.

11            And, of course, Edwards can do the same.  They

12   can talk about the trial record and argue from that.

13            What was in Mr. Nathan's mind or Dr. Buller's

14   mind about the Corevalve device when they said something at

15   trial is irrelevant.  That's not what the reexam is based

16   on.  That's where the danger comes, is that Mr. Nathan or

17   Dr. Buller gets in front of the examiner and says, well,

18   what I really meant was that the Corevalve device has these

19   properties and this is why, you know, this is why it behaves

20   this way or this is why it meets that limitation.  And that

21   is where the risk of inadvertent use is very high.

22            Plus, it's not really pertinent to what the jury

23   decided, of course, or what was presented in reexam, which

24   is, of course, all the public record, not what was in their

25   head.

1           THE COURT:  Okay.  Mr. Blumenfeld, your reaction

2      to that.

3           MR. BLUMENFELD:  Yes.  A couple things.

4           One, as Mr. Ferrall said, what they pointed out

5      was what Mr. Nathan and Dr. Buller said to the jury about

6      the Corevalve device.  But as he also said, they did more

7      than that.  They argued from that.  And what they argued,

8      among other things, was what the import of Mr. Nathan's

9      statements was --

10          THE COURT:  When you say "they," you are

11     referring to?

12          MR. BLUMENFELD:  Medtronic.  Medtronic or

13     Corevalve.

14          THE COURT:  In the reexam.

15          MR. BLUMENFELD:  In the reexam.  What they

16     argued about was, well, based on what Mr. Nathan said and

17     based on what Dr. Buller testified, this is how the reexam

18     should come out.  I don't think there is any question about

19     that.  When they are going to make arguments like that, we

20     don't see how we can respond to them without the people who

21     in a sense are being accused of having made those statements

22     being able to respond to them in whatever way Edwards thinks

23     is appropriate.

24          Edwards has invested a huge amount in Mr. Nathan

25     and his team.  And for them not to be able now to talk about

1    Irsek and Strecker, even though they weren't at trial, they

2    were always part of this litigation.  And not to be able to

3    talk about an issue that Medtronic has opened up in the

4    Patent Office by saying, the import of what Mr. Nathan and

5    Dr. Buller have said is this, it seems to us is very unfair.

6    And it really doesn't seems to me that, when you are talking

7    about prior art and patentability, that there is any real

8    danger about inadvertent disclosure of information.  It's

9    just different information.

10              We think we do have to be able to defend against

11   what they have done in the Patent Office.  There is nobody

12   better to do that than the people who are accused and who

13   have spent years living with this and studying the prior

14   art.

15              THE COURT:  If the danger, Mr. Ferrall, of

16   inadvertent use is not real, why isn't Mr. Blumenfeld

17   correct in his last assertion?

18              MR. FERRALL:  Well, Your Honor, I believe the

19   danger of inadvertent use is real, because, if it were not

20   the case, I wouldn't have this position, that's for sure.

21   My client wouldn't ask me to oppose this.  I believe the

22   danger of inadvertent use is real because the discussions

23   and the argument, I think, that Mr. Nathan or Dr. Buller may

24   make will be informed by what they had in their mind

25   regarding confidential Corevalve material.  The idea that

the Corevalve product is publicly known is true, yes.  But

not all of the attributes of it are publicly known.  Indeed,

at trial, Your Honor, you may recall, among other things,

Dr. Buller sitting on the stand saying I have next to me a

box of confidential Corevalve documents that I only had

access to as a result of this litigation, and they all

characterize the Corevalve documents as being a cylinder, or

something to that effect.

Now, that was just one example that came up at

trial.  But the point is, there is no doubt that both Dr.

Buller and Mr. Nathan have in mind detailed attributes of

the Corevalve product that are not public.

And how are we to know, when they formulate

their arguments to the Patent Office that say, well, what I

meant, really, was this, that and the other, that they are

not using their confidential information in doing so?

When we prepared the reexam, Medtronic did not

come to us and say, you know, we really want you to think

deeply about all that you have in your mind about Corevalve

or Edwards and the like in order to formulate these

arguments to the Patent Office.

Our reexam counsel -- and that's not

withstanding all of the millions of dollars that Corevalve

and Medtronic invested in Kecker & Van Nest and Knobbe

Martens in this case, just like Edwards invested in Paul

1   Weiss.

2          Instead, we have had outside reexam counsel work

3   on this from the public record alone.

4          THE COURT:  Mr. Blumenfeld.

5          MR. BLUMENFELD:  Your Honor, I don't know if you

6   want a response to that.

7          THE COURT:  Go ahead.  I have an inclination to

8   have further submissions.  But go ahead.

9          MR. BLUMENFELD:  Just to respond to that

10  briefly, further submissions would be fine with us, but this

11  really isn't about what's in the recesses of Mr. Nathan or

12  Ms. Nyarady's or anyone else's mind.  What this reexam is

13  about is prior art, statements made at trial, and

14  patentability of our patents.  It just doesn't seem to us

15  that there is any risk of inadvertent disclosure.

16         Having said that, if Your Honor would like us to

17  address further issues, we would be glad to do that.

18         THE COURT:  I might be interested in taking a

19  look at some of the Federal Circuit -- I will mess up the

20  pronunciation -- but that, too, can and should be cited in

21  any submission.

22         But there was some other authority, I forget

23  which side.

24         MR. BLUMENFELD:  I cited two opinions, one from

25  Judge Robinson, one from Judge Thynge, which we also would

1   be glad to provide.

2              THE COURT:  Counsel, how many -- I am thinking

3   of just a brief letter, some short letter briefs.  How many

4   pages do you think?

5              MR. BLUMENFELD:  I wouldn't think we need more

6   than two or three pages.

7              THE COURT:  I should think that would be

8   adequate.  Mr. Ferrall, do you agree?

9              MR. FERRALL:  I think that would be fine, Your

10  Honor.

11             THE COURT:  We will set the limit at three.  Let

12  me get an opening, an answer, and a reply.  So we will have,

13  Mr. Blumenfeld, you open, and then we will get an answer and

14  reply.  You know, you can cite anything you want.  I don't

15  know whether it would be helpful for me to have the

16  affidavit appended to the letter, Mr. Blumenfeld, at all.

17             MR. BLUMENFELD:  We would be happy to provide

18  that or any other materials from the reexam.

19             THE COURT:  I just don't want a ton of paper.

20             MR. BLUMENFELD:  It might be helpful to us to

21  submit -- I don't think you need the exhibits, the 200 pages

22  of exhibits from the declaration.  But there are also the

23  statements that Medtronic made in the request itself, which

24  might be helpful.

25             THE COURT:  Okay.  Hold on just a second,

1    counsel.

2              (Pause.)

3              THE COURT:  Okay.  Counsel, let's do that.  Do

4    you want to propose -- you can talk offline and agree on a

5    schedule for these submissions.

6              MR. BLUMENFELD:  That is fine, Your Honor.  We

7    would obviously, under the circumstances, where the reexams

8    are moving along, like to have the schedule be short.

9              THE COURT:  Yes.  It should be.  That's why I

10   mention only, you know, limited page letter briefs.  And you

11   shouldn't anticipate any kind of lengthy writing from me.

12   It's going to be short and to the point.

13             But I just don't feel comfortable -- both of you

14   are arguing very well.  It seems to me, as they say, not to

15   be a slam dunk.

16             But I have a side issue that both of you could

17   help a little with.

18             The result of the rejection of two claims in the

19   reexam on the jury's verdict.  We are in the process of

20   handling your posttrials, rather far along in that process.

21             MR. BLUMENFELD:  These are -- I should let Mr.

22   Nathan respond to that.  But these are initial office

23   actions.  There is nothing final that has happened.  At

24   least that's my understanding.

25             THE COURT:  Well, are we likely to see

1   amendments?  I am just trying to understand the potential

2   impact on my limited resources over here.  Go ahead.

3               MR. BLUMENFELD:  I will leave that to Mr.

4   Nathan.

5               MR. NATHAN:  Good morning, or good afternoon,

6   judge.

7               To answer your question about amendments, in the

8   '552 patent, which was the one that was tried to the jury,

9   there will not be any amendments.  And with respect to where

10  the reexam is, Edwards has not been heard from in the

11  reexam.  There was an initial un-final office action

12  rejecting Claim 1, which is the one that went to the jury on

13  Irsek and Strecker, which is the prior art which was dropped

14  the night before trial.

15              I don't want to go over what Mr. Blumenfeld said

16  about characterizations of what I said and what Dr. Buller

17  said.  But there is one thing that is for sure:  Dr. Buller

18  and myself said nothing about Irsek and Strecker during the

19  trial.  The words were never mentioned.  And they have

20  extrapolated other statements that Dr. Buller and I said to

21  apply to Strecker and Irsek.

22              And we feel that we ought to be in a position to

23  respond to that.

24              So the reexamination process, as you know, can

25  go on for quite some time, is only at the beginning.

1    Edwards has been heard from.

2              THE COURT:  That's helpful.

3              MR. FERRALL:  Your Honor, I did want to raise

4    that, to make the record clear, we did submit, I believe, a

5    motion for leave to supplement the record on posttrial

6    motions with reference to the office action rejection.  I

7    won't, obviously, argue it now.  I wanted to bring that to

8    your attention.

9              THE COURT:  You really don't want me to react to

10   that, that additional submission.

11             We will take a look at it.  But, in fact, I can

12   tell you that we have taken a look at it.  And I am really

13   not feeling you out there, Mr. Ferrall, as they say.  Do you

14   get my drift?

15             MR. FERRALL:  I hear you, Your Honor.

16             THE COURT:  All right.  So, counsel, make

17   sure -- I know this is going to be electronically filed, but

18   you want to make sure it comes to my attention as soon as

19   the briefing is completed.  You need to figure out how to do

20   something to make sure that happens.  Okay?

21             MR. BLUMENFELD:  We will do that, Your Honor.

22             MR. FERRALL:  We will.

23             THE COURT:  I don't want the proverbial crack

24   there, I don't want it to fall through that crack.  It

25   likely won't, given where we are in working on your

1     posttrials.   But just to be sure.   All right?

2               (Counsel respond "Thank you.")

3               THE COURT:   Thank you, counsel.

4               Conference concluded at 12:49 p.m.)

5     Reporter:   Kevin Maurer